IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly
situated,

    Plaintiff,

vs.                                                      Case No. 5:15-cv-00027-JPB

PATRIOT PAYMENT GROUP, LLC, and
NORTH AMERICAN BANCARD, LLC,

    Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

    1.    Plaintiff Diana Mey brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

    2.    In violation of the TCPA, Defendant Patriot Payment Group, LLC placed computer-dialed telemarketing calls to Ms. Mey's cellular telephone, and placed telemarketing calls to a telephone number Ms. Mey had registered on the National Do Not Call Registry – all without Ms. Mey's legally required prior express written consent.

    3.    Patriot Payment Group placed the calls to promote the services of Defendant North American Bancard, LLC ("NAB"), a company that sells merchant-processing services. Because Patriot Payment Group placed these calls for NAB, NAB is vicariously liable for all TCPA violations arising from the calls.

4. Patriot Payment Group's calls to Plaintiff were transmitted using an automated telephone dialing system, technology that the company used to generate enormous numbers of calls *en masse* to persons nationwide.

5. Accordingly, Plaintiff brings this action on behalf of a proposed nationwide class of persons who also received illegal calls from Patriot Payment Group for NAB. A class action is the best means of obtaining redress for wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Diana Mey is a resident of the State of West Virginia.

7. Defendant Patriot Payment Group, LLC is a merchant services provider and registered independent sales organization of Wells Fargo Bank, N.A., and is headquartered in Dallas, TX, but does business in this District.

8. Defendant North American Bancard, LLC, is a merchant services provider and registered independent sales organization of Wells Fargo Bank, N.A. It is headquartered in Troy, MI, but does business in this District.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. Venue is appropriate in this district pursuant to 18 U.S.C. § 1391(b)(2), as the Plaintiff is a resident of this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## TCPA Background

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

13.     Under the TCPA, as interpreted by the Federal Communications Commission, an entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

14.     The FCC's rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

15.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*.

16.     In May of 2013, the FCC reinforced these earlier findings, and determined that a seller (here, NAB) can be liable under federal common-law agency principles for illegal calls

placed by its telemarketing agents (here, Patriot Payment Group). *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 28 FCC Rcd. 6574 (F.C.C. May 9, 2013) ("2013 FCC Ruling Order").

    17.    The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.
>
> [ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* ¶¶ 46-47).

18. Accordingly, an entity can be liable under the TCPA for a call made on its behalf under a number of vicarious liability theories, even if the entity did not directly place the call at issue. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

### *The TCPA prohibits telemarketing calls to numbers listed on the Do Not Call Registry, unless the caller has the recipient's signed, written consent*

19. The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

20. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

22. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller, provided the agreement also lists the telephone number to which the calls may be placed. 47 C.F.R. § 64.1200(c)(2)(ii).

### *The TCPA bans autodialer calls to cell phones*

23.     The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

24.     The TCPA bans persons and entities from initiating telemarketing calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service unless the caller has express written consent. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

### **Factual Allegations**

25.     In January and February 2015, Plaintiff received several telemarketing calls on her cellular telephone number, which had been registered continuously since 2003 on the national Do Not Call Registry, from Patriot Payment Group.

26.     All calls were placed by Patriot Payment Group to promote the sale of NAB's merchant processing services.

27.     All calls were placed using an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

28.     For example, when one of the calls connected to Plaintiff's line, there was an audible click on the receiver, and after a pause, the calling party asked the Plaintiff to "speak with the owner." When the Plaintiff inquired about what products were being promoted, she was hung up on.

29.     These facts indicate the call was placed using an automated telephone dialing system.

30.     Additionally, Patriot Payment Group placed thousands of similar telemarketing calls per day, a rate that is practicable only when using an automated telephone dialing system.

31. Patriot Payment Group placed these calls without Plaintiff's express written consent—and in fact, by registering her telephone number on the national Do Not Call Registry some twelve years earlier, Plaintiff had expressed her desire *not* to receive telemarketing calls.

### *Patriot Payment Group Promotes NAB's Services*

32. Patriot Payment Group has placed thousands of telemarketing calls per day to promote the sale of NAB's merchant-processing services, and NAB is aware of the company's use of telemarketing to generate NAB sales.

33. The two companies are closely linked. For example, in a video describing Patriot Payment Group, the company's co-founder Leilani Kolbaba opens the video by saying, "Welcome to Patriot Payment Group, a division of North American Bancard." *See* www.patriotpaymentgroup.com (last visited September 24, 2015).

34. In addition, the footer of every page of the Patriot Payment website trumpets Patriot Payment's connection to NAB, and states, "*Patriot Payment Group LLC powered ©2014 North American Bancard - All Rights Reserved. North American Bancard, LLC is a registered ISO of Wells Fargo Bank, N.A., Walnut Creek, CA. American Express may require separate approval.*" *See* www.patriotpaymentgroup.com (last visited September 24, 2015).

35. The closeness of Patriot Payment Group's relationship with NAB is also evidenced by the fact that NAB's Chief Financial Officer is described on an NAB affiliate's website as responsible for overseeing Legal and Human Resources at Patriot Payment, which is either a "joint venture" with NAB or an NAB "subsidiary":

> Kirk Haggarty is the chief financial officer for PayAnywhere and North American Bancard (NAB), a multi-faceted payment solutions provider dedicated to delivering the latest payments technology with the highest level of customer service. Haggarty is responsible for all of the financial functions of the Companies, including but not limited to Accounting, Treasury, Capital Formation and Merger and Acquisition activities. Haggarty is also responsible

>for overseeing the Legal and Human Resources areas in addition to the following joint ventures and subsidiaries of the Company: Payment Processing Technologies, LLC, Patriot Payments, LLC, First Choice Payment Solutions, GP, Point and Pay, LLC and CDI, LLC.

*See* http://www.payanywhere.com/biokirk, (last visited September 25, 2015).

36. In fact, NAB's reliance on companies like Patriot Payment Group is well known within the merchant-processing industry, as one industry review site explained, "North American Bancard's biggest downfall seems to come from its marketing practices. In particular the company appears to be a hiring mill that relies heavily upon recruiting independent agents and resellers. NAB's reliance on its sales agents is confirmed by its website, which touts NAB's affiliate marketing arrangements, where it outsources a portion of its sales and offers its agents a $3,000 signing bonus and $1,000 per merchant signed up: http://www.gonab.com." *See* https://www.cardpaymentoptions.com/credit-card-processors/north-american-bancard-complaints-review-and-rating/?gclid=CNPjvbOUtsgCFYKQHwod9HgM8Q (last visited October 9, 2015) (internal citations omitted).

## Class Action Allegations

37. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

38. The class of persons Plaintiff proposes to represent with respect to Count One is tentatively defined, subject to discovery and investigation, as:

>All persons within the United States who, from February 27, 2011 through the date of class certification: (1) were sent a call, (2) at a number assigned to a cellular telephone service, (3) from or on behalf of Patriot Payment Group, (4) promoting the sale of NAB's good or services.

39. The class of persons Plaintiff proposes to represent with respect to Count Two is tentatively defined, subject to discovery and investigation, as:

> All persons within the United States who, from February 27, 2011 through the date of class certification: (1) were sent at least one call in any twelve-month period, (2) at a number registered on the national Do Not Call Registry for at least 31 days, (3) from or on behalf of Patriot Payment Group, (4) promoting the sale of NAB's goods or services.

40. The class members are identifiable through telephone records Plaintiff has received in discovery.

41. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

42. Plaintiff is a member of both classes.

43. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

   a. Whether Patriot Payment Group violated the TCPA by engaging in advertising by unsolicited telemarketing calls;

   b. Whether Patriot Payment Group engaged in a pattern of using an automatic telephone dialing system to call telephone numbers assigned to cellular telephone service;

   c. Whether Patriot Payment Group placed calls to cellular telephone numbers using an automatic telephone dialing system without obtaining the recipients' prior consent for the call;

   d. Whether NAB is liable for Patriot Payment Group's actions;

   e. Whether the Plaintiffs and the class members are entitled to statutory damages as a result of Patriot Payment Group and NAB's actions.

44.     Plaintiff's claims are typical of the claims of class members, as she and all class members received calls from Patriot Payment Group on their cellular phones or at a number listed on the national Do Not Call Registry.

45.     Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

46.     The actions of the defendants are generally applicable to the class as a whole and to Plaintiff.

47.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by defendants and/or its agents, or maintained by the Federal Trade Commission.

48.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions prohibiting autodialer and prerecorded message calls to cell phones

49.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

50.     The Defendants are directly or vicariously liable for violations of the TCPA, specifically, by initiating telephone calls using an automated dialing system or prerecorded voice

to Plaintiff's telephone number assigned to a cellular telephone service. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

51.     The Defendant's violations were negligent, willful, and knowing.

## Count Two:
## Violation of the TCPA's Do Not Call Provision

52.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

53.     The Defendants violated the TCPA by (a) initiating more than one telephone call to the Plaintiff in a twelve month period while her number was on the National Do Not Call Registry, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 U.S.C. § 227(c).

54.     The Defendant's violations were negligent, willful, and knowing.

## Count Three:
## Injunctive relief to bar future TCPA violations

55.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

56.     The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

57.     The Plaintiff respectfully petitions this Court to order the Defendants, and their employees, agents and independent distributors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA and from accepting business obtained by third parties via telemarketing.

## Relief Sought

For herself and all class members, Plaintiff requests the following relief:

1. That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

2. That, should the Court permit the Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

3. That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

4. That the Court enter a judgment finding that Patriot Payment Group acted as NAB's agent for purposes of the class calls, and therefore that NAB is vicariously liable to Plaintiff and all class members for all violations arising from the calls;

5. That the Court enter a judgment finding that Patriot Payment Group is directly liable to Plaintiff and all class members for all violations arising from the calls;

6. That the Court enter a judgment finding that Patriot Payment Group and NAB are jointly and severally liable to Plaintiff and all class members for all violations arising from the calls;

7. That Patriot Payment Group, NAB, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

8. That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure;

9. That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation;

10. That the Court enter an order awarding the Plaintiff reasonable attorneys' fees and costs; and

11. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff Diana Mey
By Counsel,

/s/ John W. Barrett
John W. Barrett (WVSB#7289)
Jonathan R. Marshall (WVSB#10580)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Edward A. Broderick
Anthony Paronich
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

## CERTIFICATE OF SERVICE

      I, Jonathan R. Marshall, hereby certify that on January 6, 2016, I caused to be filed the foregoing First Amended Class Action Complaint with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all counsel of record.

                                       */s/ Jonathan R. Marshall*
                                       Jonathan R. Marshall